UNITED STATES of America, State of Alabama, State of California, State of Iowa, State of Kansas, State of Minnesota, State of North Dakota, and State of South Dakota, Plaintiffs,

v.

VERIZON COMMUNICATIONS INC., and Alltel Corporation, Defendants.

No. 1:08–cv–01878 (EGS).

United States District Court, District of Columbia.

March 5, 2009.

Hillary B. Burchuk, U.S. Department of Justice, Washington, DC, Paula Lauren Gibson, Office of the Attorney General/State of California, Los Angeles, CA, Layne M. Lindebak, Iowa Department of Justice, Des Moines, IA, Lynette R. Bakker, Kansas Office of The Attorney General, Topeka, KS, Kristen Marie Olsen, Minnesota Attorney's General's Office, St. Paul, MN, Parrell D. Grossman, North Dakota Office of the Attorney General, Bismarck, ND, Jeffrey Paul Hallem, South Dakota Office of the Attorney General, Pierre, SD, for Plaintiffs.

John Thorne, David Earl Wheeler, Kristan Kathleen McMahon, Verizon, Arlington, VA, Ilene Knable Gotts, c/o Wachtell, Lipton, Rosen & Katz, New York, NY, for Defendants.

## FINAL JUDGMENT

EMMET G. SULLIVAN, District Judge.

WHEREAS, plaintiffs, United States of America, State of Alabama, State of California, State of Iowa, State of Kansas, State of Minnesota, State of North Dakota, and State of South Dakota, filed their Complaint on October 30, 2008, plaintiffs and defendants, Verizon Communications Inc. ("Verizon") and Alltel Corporation ("Alltel"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain lessened;

AND WHEREAS, plaintiffs require defendants to make certain divestitures for

the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to plaintiffs that the divestitures required below can and will be made and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. *Jurisdiction*

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. *Definitions*

As used in this Final Judgment:

A. "Acquirer" or "Acquirers" means the entity or entities to whom defendants divest the Divestiture Assets.

B. "Alltel" means Alltel Corporation, a subsidiary of Atlantis Holdings LLC, a corporation organized and existing under the laws of the State of Delaware, with headquarters in Little Rock, Arkansas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C. "CMA" means cellular market area which is used by the Federal Communications Commission ("FCC") to define cellular license areas and which consists of Metropolitan Statistical Areas ("MSAs") and Rural Service Areas ("RSAs").

D. "Divestiture Assets" means each mobile wireless telecommunications service business to be divested under this Final Judgment, including all types of assets, tangible and intangible, used by defendants in the operation of the mobile wireless telecommunications services businesses to be divested. To ensure that the divested mobile wireless telecommunications services businesses remain viable, ongoing businesses, the terra "Divestiture Assets" shall be construed broadly to accomplish the complete divestiture, as required by this Final Judgment, of the entire business of:

1) Alltel in each of the following CMA license areas:

(a) Lima OH MSA (CMA 158);

(b) Hickory NC MSA (CMA 166);

(c) Fargo–Moorhead ND–MN MSA (CMA 221);

(d) Mansfield OH MSA (CMA 231);

(e) Dothan AL MSA (CMA 246);

(f) Sioux City IA–NE MSA (CMA 253);

(g) Albany GA MSA (CMA 261);

(h) Danville VA MSA (CMA 262);

(i) Sioux Falls SD MSA (CMA 267);

(j) Billings MT MSA (CMA 268);

(k) Grand Forks ND–MN MSA (CMA 276);

(*l*) Rapid City SD MSA (CMA 289);

(m) Great Falls MT MSA (CMA 297);

(n) Bismarck ND MSA (CMA 298);

(o) Casper WY MSA (CMA 299);

(p) AL RSA 7 (CMA 313);

(q) AZ RSA 5 (CMA 322);

(r) CA RSA 6 (CMA 341);

(s) CO RSA 4 (CMA 351);

(t) CO RSA 5 (CMA 352);

(u) CO RSA 6 (CMA 353);

(v) CO RSA 7 (CMA 354);

(w) CO RSA 8 (CMA 355);

(x) CO RSA 9 (CMA 356);

(y) GA RSA 6 (CMA 376);

(z) GA RSA 7 (CMA 377);

(aa) GA RSA 8 (CMA 378);

(bb) GA RSA 9 (CMA 379);

(cc) GA RSA 10 (CMA 380);

(dd) GA RSA 12 (CMA 382);

(ee) GA RSA 13 (CMA 383);

(ff) ID RSA 2 (CMA 389);

(gg) ID RSA 3 (CMA 390);

(hh) IL RSA 8 (CMA 401);

(ii) IL RSA 9 (CMA 402);

(jj) IA RSA 8 (CMA 419);

(kk) MN RSA 1 (CMA 482);

(ll) MN RSA 2 (CMA 483);

(mm) MT RSA 1 (CMA 523);

(nn) MT RSA 2 (CMA 524);

(oo) MT RSA 4 (CMA 526);

(pp) MT RSA 5 (CMA 527);

(qq) MT RSA 6 (CMA 528);

(rr) MT RSA 7 (CMA 529);

(ss) MT RSA 8 (CMA 530);

(tt) MT RSA 9 (CMA 531);

(uu) MT RSA 10 (CMA 532);

(vv) NV RSA 2 (CMA 544);

(ww) NV RSA 5 (CMA 547);

(xx) NM RSA 1 (CMA 553);

(yy) NM RSA 5 (CMA 557);

(zz) NM RSA 6 (CMA 558);

(aaa) NC RSA 2 (CMA 566);

(bbb) NC RSA 5 (CMA 569);

(ccc) ND RSA 1 (CMA 580);

(ddd) ND RSA 2 (CMA 581);

(eee) ND RSA 3 (CMA 582);

(fff) ND RSA 4 (CMA 583);

(ggg) ND RSA 5 (CMA 584);

(hhh) OH RSA 2 (CMA 586);

(iii) OH RSA 5 (CMA 589);

(jjj) OH RSA 6 (CMA 590);

(kkk) SC RSA 1 (CMA 625);

(lll) SC RSA 2 (CMA 626);

(mmm) SC RSA 3 (CMA 627);

(nnn) SC RSA 7 (CMA 631);

(ooo) SD RSA 1 (CMA 634);

(ppp) SD RSA 2 (CMA 635);

(qqq) SD RSA 3 (CMA 636);

(rrr) SD RSA 4 (CMA 637);

(sss) SD RSA 5 (CMA 638);

(ttt) SD RSA 6 (CMA 639);

(uuu) SD RSA 7 (CMA 640);

(vvv) SD RSA 8 (CMA 641);

(www) SD RSA 9 (CMA 642);

(xxx) UT RSA 3 (CMA 675);

(yyy) UT RSA 4 (CMA 676);

(zzz) UT RSA 5 (CMA 677);

(aaaa) UT RSA 6 (CMA 678);

(bbbb) VA RSA 1 (CMA 681);

(cccc) VA RSA 8 (CMA 688);

(dddd) WY RSA 1 (CMA 718);

(eeee) WY RSA 2 (CMA 719);

(ffff) WY RSA 4 (CMA 721);

(gggg) WY RSA 5 (CMA 722);

2) Verizon, that was acquired from Rural Cellular Corporation in August 2008, in each of the following CMA license areas:

(a) KS RSA 1 (CMA 428);

(b) KS RSA 2 (CMA 429);

(c) KS RSA 6 (CMA 433);

(d) KS RSA 7 (CMA 434);

(e) KS RSA 11 (CMA 438);

(f) KS RSA 12 (CMA 439);

(g) KS RSA 13 (CMA 440); and

3) Verizon (but not including any assets acquired from Rural Cellular Corporation) in each of the following CMA license areas:

(a) MN RSA 7 (CMA 488); and

(b) NE RSA 5 (CMA 537).

The Divestiture Assets shall include, without limitation, all types of real and personal property, monies and financial instruments, equipment, inventory, office furniture, fixed assets and furnishings, supplies and materials, contracts, agreements, leases, commitments, spectrum licenses issued by the FCC and all other licenses, permits and authorizations, operational support systems, cell sites, network infrastructure, switches, customer support and billing systems, interfaces with other service providers, business and customer records and information, customer contracts, customer lists, credit records, accounts, and historic and current business plans that relate primarily to the wireless businesses being divested, as well as any patents, licenses, sublicenses, trade secrets, know-how, drawings, blueprints, designs, technical and quality specifications and protocols, quality assurance and control procedures, manuals and other technical information defendants supply to their own employees, customers, suppliers, agents, or licensees, and trademarks, trade names and service marks or other intellectual property, including all intellectual property rights under third-party licenses that are capable of being transferred to the Acquirer(s) either in their entirety, for assets described in (a) below, or through a license obtained through or from defendants, for assets described in (b) below; provided that defendants shall only be required to divest Multi-line Business Customer contracts if the primary business address for that customer is located within any of the license areas described herein, and further, any subscriber who obtains mobile wireless telecommunications services through any such contract retained by defendants and who are located within the license areas identified above, shall be given the option to terminate their relationship with defendants, without financial cost, at any time within one year of the closing of the Transaction. Defendants shall provide written notice to these subscribers within 45 days after the closing of the Transaction of the option to terminate.

The divestiture of the Divestiture Assets shall be accomplished by:

(a) transferring to the Acquirer(s) the complete ownership and/or other rights to the assets (other than those assets used substantially in the operations of defendants' overall wireless telecommunications services business that must be retained to continue the existing operations of the wireless properties that defendants are not required to divest, and that either are not capable of being divided between the divested wireless telecommunications services businesses and those not divested, or are assets that the defendants and the Acquirer(s) agree, subject to the approval of plaintiff United States, shall not be divided); and

(b) granting to the Acquirer(s) an option to obtain a nonexclusive, transferable license from defendants for a reasonable period, subject to the approval of plaintiff United States, and at the election of the Acquirer(s), to use any of defendants' retained assets under paragraph (a) above used in operating the mobile wireless telecommunications services businesses being divested, so as to enable the Acquirer(s) to continue to operate the divested mobile wireless telecommunications services businesses without impairment. Defendants

shall identify in a schedule submitted to plaintiff United States and filed with the Court as expeditiously as possible following the filing of the Complaint, and in any event prior to any divestiture and before the approval by the Court of this Final Judgment, any and all intellectual property rights under third-party licenses that are used by the mobile wireless telecommunications services businesses being divested that defendants could not transfer to the Acquirer(s) entirely or by license without third-party consent, the specific reasons why such consent is necessary, and how such consent would be obtained for each asset.

E. "Multi-line Business Customer" means a corporate or business customer that contracts with a divesting defendant for mobile wireless telecommunications services to provide multiple telephones to its employees or members whose services are provided pursuant to a contract with the corporate or business customer.

F. "Transaction" means the Agreement and Plan of Merger among Cellco Partnership, Airtouch Cellular, Abraham Merger Corporation, Alltel Corporation and Atlantis Holdings LLC, dated June 5, 2008.

G. "Verizon" means defendant Verizon Communications Inc., a Delaware corporation, with its headquarters in New York, New York, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

### III. *Applicability*

A. This Final Judgment applies to defendants Verizon and Alltel, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B. If, prior to complying with Section IV and V of this Final Judgment, defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from the acquirer(s) of the assets divested pursuant to this Final Judgment.

### IV. *Divestitures*

A. Defendants are ordered and directed, within 120 days after consummation of the Transaction, or five calendar days after notice of the entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer or Acquirers acceptable to plaintiff United States in its sole discretion, upon consultation with the relevant plaintiff State, or, if applicable, to a Divestiture Trustee designated pursuant to Section V of this Final Judgment. Plaintiff United States, in its sole discretion, upon consultation with the relevant plaintiff State, may agree to one or more extensions of this time period not to exceed 60 calendar days in total, and shall notify the Court in such circumstances. With respect to divestiture of the Divestiture Assets by defendants or the Divestiture Trustee, if applications have been filed or are on file with the FCC within the period permitted for divestiture seeking approval to assign or transfer licenses to the Acquirer(s) of the Divestiture Assets, but an order or other dispositive action by the FCC on such applications has not been issued before the end of the period permitted for divestiture, the period shall be extended with respect to divestiture of those Divestiture Assets for which FCC approval has not been issued until

five days after such approval is received. Defendants agree to use their best efforts to accomplish the divestitures set forth in this Final Judgment and to seek all necessary regulatory approvals as expeditiously as possible. This Final Judgment does not limit the FCC's exercise of its regulatory powers and process with respect to the Divestiture Assets. Authorization by the FCC to conduct the divestiture of a Divestiture Asset in a particular manner will not modify any of the requirements of this decree.

B.  In accomplishing the divestitures ordered by this Final Judgment, defendants shall promptly make known, if they have not already done so, by usual and customary means, the availability of the Divestiture Assets.  Defendants shall inform any person making inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Defendants shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client or work product privileges.  Defendants shall make available such information to plaintiffs at the same time that such information is made available to any other person.

C.  Defendants shall provide the Acquirer(s) and plaintiffs information relating to the personnel involved in the operation, development, and sale or license of the Divestiture Assets to enable the Acquirer(s) to make offers of employment. Defendants will not interfere with any negotiations by the Acquirer(s) to employ any defendant employee whose primary responsibility is the operation, development, or sale or license of the Divestiture Assets.

D.  Defendants shall permit prospective Acquirers of the Divestiture Assets to have reasonable access to personnel and to make inspections of the Divestiture Assets; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, and other documents and information customarily provided as part of a due diligence process.

E.  Defendants shall warrant to the Acquirer(s) that (1) the Divestiture Assets will be operational on the date of sale, and (2) every wireless spectrum license is in full force and effect on the date of sale.

F.  Defendants shall not take any action that will impede in any way the permitting, licensing, operation, or divestiture of the Divestiture Assets.

G.  Defendants shall warrant to the Acquirer(s) of the Divestiture Assets that there are no material defects in the environmental, zoning, licensing or other permits pertaining to the operation of each asset and that following the sale of the Divestiture Assets, defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, licensing or other permits relating to the operation of the Divestiture Assets.

H.  Unless plaintiff United States, in its sole discretion upon consultation with the relevant plaintiff State, otherwise consents in writing, the divestitures pursuant to Section IV, or by a Divestiture Trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy plaintiff United States in its sole discretion that these assets can and will be used by the Acquirer(s) as part of a viable, ongoing business engaged in the provision of mo-

bile wireless telecommunications services. The divestiture of the Divestiture Assets, whether pursuant to Section IV or Section V of this Final Judgment:

1) shall be made to an Acquirer or Acquirers that, in plaintiff United States's sole judgment, upon consultation with the relevant plaintiff State, has the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the provision of mobile wireless telecommunications services; and

2) shall be accomplished so as to satisfy plaintiff United States in its sole discretion, upon consultation with the relevant plaintiff State, that none of the terms of any agreement between an Acquirer(s) and defendants shall give defendants the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere with the ability of the Acquirer to compete effectively.

I. The Divestiture Assets listed in each numbered subsection below shall be divested together to a single Acquirer, provided that it is demonstrated to the sole satisfaction of plaintiff United States, upon consultation with the relevant plaintiff State, that the Divestiture Assets will remain viable and the divestiture of such assets will remedy the competitive harm alleged in the Complaint:

1) Alabama
   a) Dothan MSA (CMA 246);
   b) AL RSA 7 (CMA 313);
2) Colorado
   a) CO RSA 4 (CMA 351);
   b) CO RSA 5 (CMA 352);
   c) CO RSA 6 (CMA 353);
   d) CO RSA 7 (CMA 354);
   e) CO RSA 8 (CMA 355);
   f) CO RSA 9 (CMA 356);
3) Georgia

   a) Albany MSA (CMA 261);
   b) GA RSA 6 (CMA 376);
   c) GA RSA 7 (CMA 377);
   d) GA RSA 8 (CMA 378);
   e) GA RSA 9 (CMA 379);
   f) GA RSA 10 (CMA 380);
   g) GA RSA 12 (CMA 382);
   h) GA RSA 13 (CMA 383);
4) Idaho
   a) ID RSA 2 (CMA 389);
   b) ID RSA 3 (CMA 390);
5) Illinois
   a) IL RSA 8 (CMA 401);
   b) IL RSA 9 (CMA 402);
6) Iowa/Nebraska
   a) Sioux City MSA (CMA 253);
   b) IA RSA 8 (CMA 419);
   c) NE RSA 5 (CMA 537);
7) Kansas
   a) KS RSA 1 (CMA 428);
   b) KS RSA 2 (CMA 429);
   c) KS RSA 6 (CMA 433);
   d) KS RSA 7 (CMA 434);
   e) KS RSA 11 (CMA 438);
   f) KS RSA 12 (CMA 439);
   g) KS RSA 13 (CMA 440);
8) Southern Minnesota
   a) MN RSA 7 (CMA 488);
9) Montana
   a) Billings MSA (CMA 268);
   b) Great Falls MSA (CMA 297);
   c) MT RSA 1 (CMA 523);
   d) MT RSA 2 (CMA 524);
   e) MT RSA 4 (CMA 526);
   f) MT RSA 5 (CMA 527);
   g) MT RSA 6 (CMA 528);
   h) MT RSA 7 (CMA 529);
   i) MT RSA 8 (CMA 530);
   j) MT RSA 9 (CMA 531);
   k) MT RSA 10 (CMA 532);

10) Nevada
   a) NV RSA 2 (CMA 544);
   b) NV RSA 5 (CMA 547);
11) New Mexico
   a) NM RSA 5 (CMA 557);
   b) NM RSA 6 (CMA 558);
12) North Carolina
   a) Hickory MSA (CMA 166);
   b) NC RSA 2 (CMA 566);
   c) NC RSA 5 (CMA 569);
13) North Dakota/Northern Minnesota
   a) Fargo–Moorhead ND–MN MSA (CMA 221);
   b) Grand Forks ND–MN MSA (CMA 276);
   c) Bismarck MSA (CMA 298);
   d) MN RSA 1 (CMA 482);
   e) MN RSA 2 (CMA 483);
   f) ND RSA 1 (CMA 580);
   g) ND RSA 2 (CMA 581);
   h) ND RSA 3 (CMA 582);
   i) ND RSA 4 (CMA 583);
   j) ND RSA 5 (CMA 584);
14) Ohio
   a) Lima MSA (CMA 158);
   b) Mansfield MSA (CMA 231);
   c) OH RSA 2 (CMA 586);
   d) OH RSA 5 (CMA 589);
   e) OH RSA 6 (CMA 590);
15) South Carolina
   a) SC RSA 1 (CMA 625);
   b) SC RSA 2 (CMA 626);
   c) SC RSA 3 (CMA 627);
   d) SC RSA 7 (CMA 631);
16) South Dakota
   a) Sioux Falls MSA (CMA 267);
   b) Rapid City MSA (CMA 289);
   c) SD RSA 1 (CMA 634);
   d) SD RSA 2 (CMA 635);
   e) SD RSA 3 (CMA 636);
   f) SD RSA 4 (CMA 637);
   g) SD RSA 5 (CMA 638);
   h) SD RSA 6 (CMA 639);
   i) SD RSA 7 (CMA 640);
   j) SD RSA 8 (CMA 641);
   k) SD RSA 9 (CMA 642);
17) Utah
   a) UT RSA 3 (CMA 675);
   b) UT RSA 4 (CMA 676);
   c) UT RSA 5 (CMA 677);
   d) UT RSA 6 (CMA 678);
18) Wyoming
   a) Casper MSA (CMA 299);
   b) WY RSA 1 (CMA 718);
   c) WY RSA 2 (CMA 719);
   d) WY RSA 4 (CMA 721);
   e) WY RSA 5 (CMA 722);

provided however: (i) the Divestiture Assets in Minnesota RSA 7 must be divested to the same acquirer as the wireless business assets in Minnesota RSA 7 (CMA 488), Minnesota RSA 8 (CMA 489), Minnesota RSA 9 (CMA 490) and Minnesota RSA 10 (CMA 491), recently purchased by defendant Verizon from Rural Cellular Corporation, that must be divested pursuant to the proposed Modified Final Judgment in *United States et al. v. ALLTEL Corp. et al.*, Civ. No. 06–3631 (RHK/AJB) (D. MN filed Sept. 7, 2006); (ii) the Divestiture Assets in New Mexico RSAs 5 and 6 must be divested to the same acquirer as the wireless business assets in the Las Cruces NM MSA (CMA 285), currently owned by defendant Alltel, that must be divested pursuant to the proposed Modified Final Judgment in *United States v. Bell Atlantic Corp. et al.*, Civ. No. 1:99CV01119 (EGS) (D.D.C. filed May 7, 1999); (iii) the Divestiture Assets in the Lima and Mansfield OH MSAs and OH RSAs 2, 5 and 6 must be divested to the same acquirer as the wireless business assets in the OH RSA 3 (CMA 587), currently owned by defendant Alltel, that must be

divested pursuant to the proposed Modified Final Judgment in *United States v. Bell Atlantic Corp. et al.*, Civ. No. 1:99CV01119 (EGS) (D.D.C. May 1, 1999); and (iv) the Divestiture Assets in SC RSAs 1, 2, 3 and 7 must be divested to the same acquirer as the wireless business assets in the Anderson SC MSA (CMA 227), currently owned by defendant Alltel, that must be divested pursuant to the proposed Modified Final Judgment in *United States v. Bell Atlantic Corp. et al.*, Civ. No. 1:99CV01119 (EGS) (D.D.C. May 7, 1999). In addition to the foregoing, nothing in this section shall be construed as limiting the ability of an Acquirer to purchase the assets in more than one numbered subsection, and defendants shall be required to consider bids from potential acquirers that are contingent on the acquisition of all of the assets in more than one of the numbered subsections. The assets in each CMA license area listed in Subsection II.D of this Final Judgment but not listed in any of the above subsections (Danville VA MSA (CMA 262); AZ RSA 5 (CMA 322); CA RSA 6 (CMA 341); NM RSA 1 (CMA 553);VA RSA 1 (CMA 681); and VA RSA 8 (CMA 688)) can be sold to a single Acquirer or acquired together with other Divestiture Assets. With the written approval of plaintiff United States, in its sole discretion, upon consultation with the relevant plaintiff State, defendants or the Divestiture Trustee may sell, to a single acquirer, fewer than all of the assets contained in the numbered subsections above, to facilitate prompt divestiture to an acceptable Acquirer(s).

J.  At the option of the Acquirer(s) of the Divestiture Assets, defendants shall enter into a contract for transition services customarily provided in connection with the sale of a business providing mobile wireless telecommunications services or intellectual property licensing sufficient to meet all or part of the needs of the Acquirer(s) for a period of up to one year, provided that defendants shall only be required to license the Verizon brand to the acquirer(s) of the Divestiture Assets in the CMAs listed in Section II.D.3 for a period of nine (9) months. The terms and conditions of any contractual arrangement meant to satisfy this provision must be reasonably related to market conditions.

K.  To the extent that the Divestiture Assets use intellectual property, as required to be identified by Section II.D, that cannot be transferred or assigned without the consent of the licensor or other third parties, defendants shall use their best efforts to obtain those consents.

## V. *Appointment of Divestiture Trustee*

A.  If defendants have not divested the Divestiture Assets within the time period specified in Section IV.A, defendants shall notify plaintiff United States, and the relevant plaintiff State of that fact in writing, specifically identifying the Divestiture Assets that have not been divested. Upon application of plaintiff United States, upon consultation with the relevant plaintiff State, the Court shall appoint a Divestiture Trustee selected by plaintiff United States and approved by the Court to effect the divestiture of the Divestiture Assets. The Divestiture Trustee will have all the rights and responsibilities of the Management Trustee who may be appointed pursuant to the Preservation of Assets Stipulation and Order, and will be responsible for:

(1) accomplishing divestiture of all Divestiture Assets transferred to the Divestiture Trustee from defendants, in accordance with the terms of this Final Judgment, to an Acquirer(s) approved by plaintiff United States, in its sole discretion upon consultation with the relevant plaintiff State, under Section IV.A of this Final Judgment; and

(2) exercising the responsibilities of the licensee of any transferred Divestiture Assets and controlling and operating any transferred Divestiture Assets, to ensure that the businesses remain ongoing, economically viable competitors in the provision of mobile wireless telecommunications services in the license areas specified in Section II.D, until they are divested to an Acquirer(s), and the Divestiture Trustee shall agree to be bound by this Final Judgment.

B. Defendants shall submit a proposed trust agreement ("Trust Agreement") to plaintiff United States, which must be consistent with the terms of this Final Judgment and which must receive approval by plaintiff United States in its sole discretion, upon consultation with the relevant plaintiff State, who shall communicate to defendants within 10 business days its approval or disapproval of the proposed Trust Agreement, and which must be executed by the defendants and the Divestiture Trustee within five business days after approval by plaintiff United States.

C. After obtaining any necessary approvals from the FCC for the assignment of the licenses of the Divestiture Assets to the Divestiture Trustee, defendants shall irrevocably divest the remaining Divestiture Assets to the Divestiture Trustee, who will own such assets (or own the stock of the entity owning such assets, if divestiture is to be effected by the creation of such an entity for sale to Acquirer) and control such assets, subject to the terms of the approved Trust Agreement.

D. After the appointment of a Divestiture Trustee becomes effective, only the Divestiture Trustee shall have the right to sell the Divestiture Assets. The Divestiture Trustee shall have the power and authority to accomplish the divestiture to an Acquirer(s) acceptable to plaintiff United States, in its sole judgment, upon consultation with the relevant plaintiff State, at such price and on such terms as are then obtainable upon reasonable effort by the Divestiture Trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V.G of this Final Judgment, the Divestiture Trustee may hire at the cost and expense of defendants the Management Trustee appointed pursuant to the Preservation of Assets Stipulation and Order and any investment bankers, attorneys or other agents, who shall be solely accountable to the Divestiture Trustee, reasonably necessary in the Divestiture Trustee's judgment to assist in the divestiture.

E. In addition, notwithstanding any provision to the contrary, plaintiff United States, in its sole discretion, upon consultation with the relevant plaintiff State, may 1) require defendants to include additional assets, and 2) with the written approval of plaintiff United States, allow defendants to substitute substantially similar assets, which substantially relate to the Divestiture Assets to be divested by the Divestiture Trustee.

F. Defendants shall not object to a sale by the Divestiture Trustee on any ground other than the Divestiture Trustee's malfeasance. Any such objections by defendants must be conveyed in writing to plaintiff United States and the Divestiture Trustee within 10 calendar days after the Divestiture Trustee has provided the notice required under Section VI.

G. The Divestiture Trustee shall serve at the cost and expense of defendants, on such terms and conditions as plaintiff United States approves, and shall account for all monies derived from the sale of the assets sold by the Divestiture Trustee and all costs and expenses so incurred. After

approval by the Court of the Divestiture Trustee's accounting, including fees for its services and those of any professionals and agents retained by the Divestiture Trustee, all remaining money shall be paid to defendants and the trust shall then be terminated. The compensation of the Divestiture Trustee and any professionals and agents retained by the Divestiture Trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the Divestiture Trustee with an incentive based on the price and terms of the divestiture, and the speed with which it is accomplished, but timeliness is paramount.

H. Defendants shall use their best efforts to assist the Divestiture Trustee in accomplishing the required divestitures, including their best efforts to effect all necessary regulatory approvals. The Divestiture Trustee and any consultants, accountants, attorneys, and other persons retained by the Divestiture Trustee shall have full and complete access to the personnel, books, records, and facilities of the businesses to be divested, and defendants shall develop financial and other information relevant to the assets to be divested as the Divestiture Trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the Divestiture Trustee's accomplishment of the divestitures.

I. After its appointment, the Divestiture Trustee shall file monthly reports with plaintiff United States, and the relevant plaintiff States, and the Court setting forth the Divestiture Trustee's efforts to accomplish the divestitures ordered under this Final Judgment. To the extent such reports contain information that the Divestiture Trustee deems confidential, such re-
ports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The Divestiture Trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

J. If the Divestiture Trustee has not accomplished the divestitures ordered under the Final Judgment within six months after its appointment, the Divestiture Trustee shall promptly file with the Court a report setting forth (1) the Divestiture Trustee's efforts to accomplish the required divestitures, (2) the reasons, in the Divestiture Trustee's judgment, why the required divestitures have not been accomplished, and (3) the Divestiture Trustee's recommendations. To the extent such reports contain information that the Divestiture Trustee deems confidential, such reports shall not be filed in the public docket of the Court. The Divestiture Trustee shall at the same time furnish such report to plaintiff United States, and the relevant plaintiff States, who shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the Divestiture Trustee's appointment by a period requested by plaintiff United States, upon consultation with the relevant plaintiff States.

K. After defendants transfer the Divestiture Assets to the Divestiture Trustee, and until those Divestiture Assets have been divested to an Acquirer or Ac-

quirers approved by plaintiff United States pursuant to Sections IV.A and IV.H, the Divestiture Trustee shall have sole and complete authority to manage and operate the Divestiture Assets and to exercise the responsibilities of the licensee and shall not be subject to any control or direction by defendants. Defendants shall not use, or retain any economic interest in, the Divestiture Assets transferred to the Divestiture Trustee, apart from the right to receive the proceeds of the sale or other disposition of the Divestiture Assets.

L. The Divestiture Trustee shall operate the Divestiture Assets consistent with the Preservation of Assets Stipulation and Order and this Final Judgment, with control over operations, marketing, and sales. Defendants shall not attempt to influence the business decisions of the Divestiture Trustee concerning the operation and management of the Divestiture Assets, and shall not communicate with the Divestiture Trustee concerning divestiture of the Divestiture Assets or take any action to influence, interfere with, or impede the Divestiture Trustee's accomplishment of the divestitures required by this Final Judgment, except that defendants may communicate with the Divestiture Trustee to the extent necessary for defendants to comply with this Final Judgment and to provide the Divestiture Trustee, if requested to do so, with whatever resources or cooperation may be required to complete divestiture of the Divestiture Assets and to carry out the requirements of the Preservation of Assets Stipulation and Order and this Final Judgment. Except as provided in this Final Judgment and the Preservation of Assets Stipulation and Order, in no event shall defendants provide to, or receive from, the Divestiture Trustee or the mobile wireless telecommunications services businesses any nonpublic or competitively sensitive marketing, sales, pricing or other information relating to their respective mobile wireless telecommunications services businesses.

## VI. *Notice of Proposed Divestitures*

A. Within the later of two (2) business days following (i) the execution of a definitive divestiture agreement, or (ii) the filing of the Complaint in this action, defendants or the Divestiture Trustee, whichever is then responsible for effecting the divestitures required herein, shall notify plaintiff United States, and the relevant plaintiff State, in writing of any proposed divestiture required by Section IV or V of this Final Judgment. If the Divestiture Trustee is responsible, it shall similarly notify defendants. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B. Within fifteen (15) calendar days of receipt of notice by plaintiff United States and the relevant plaintiff State, plaintiff United States and any plaintiff State receiving such notice, may request from defendants, the proposed Acquirer, any other third party, or the Divestiture Trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer. Defendants and the Divestiture Trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C. Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after plaintiff United States and the relevant plaintiff State have been provided the additional information requested from defendants, the proposed Acquirer, any third party, and the Divesti-

ture Trustee, whichever is later, plaintiff United States, upon consultation with the relevant plaintiff State, shall provide written notice to defendants and the Divestiture Trustee, if there is one, stating whether or not it objects to the proposed divestiture. If plaintiff United States provides written notice that it does not object, the divestiture may be consummated, subject only to defendants' limited right to object to the sale under Section V.F of this Final Judgment. Absent written notice that plaintiff United States does not object to the proposed Acquirer or upon objection by plaintiff United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by defendants under Section V.F, a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. *Financing*

Defendants shall not finance all or any part of any divestiture made pursuant to Section IV or V of this Final Judgment.

## VIII. *Preservation of Assets*

Until the divestitures required by this Final Judgment have been accomplished, defendants shall take all steps necessary to comply with the Preservation of Assets Stipulation and Order entered by this Court and cease use of the Divestiture Assets during the period that the Divestiture Assets are managed by the Management Trustee. Defendants shall take no action that would jeopardize the divestitures ordered by this Court.

## IX. *Affidavits*

A. Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestitures have been completed under Section IV or V, defendants shall deliver to plaintiffs an affidavit as to the fact and manner of its compliance with Section IV or V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts defendants have taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by plaintiff United States upon consultation with the relevant plaintiff State, to information provided by defendants, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B. Within twenty (20) calendar days of the filing of the Complaint in this matter, defendants shall deliver to plaintiffs an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Defendants shall deliver to plaintiffs an affidavit describing any changes to the efforts and actions outlined in defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C. Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestitures have been completed.

## X. *Compliance Inspection*

A. For the purposes of determining or securing compliance with this Final Judg-

ment or whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, authorized representatives of the United States Department of Justice (including consultants and other persons retained by plaintiff United States) shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants, be permitted:

(1) access during defendants' office hours to inspect and copy, or at plaintiff United States's option, to require defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data and documents in the possession, custody, or control of defendants, relating to any matters contained in this Final Judgment; and

(2) to interview, either informally or on the record, defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendants.

B. Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C. No information or documents obtained by the means provided in this section shall be divulged by plaintiff United States to any person other than an authorized representative of the executive branch of plaintiff United States, any relevant plaintiff state, or, pursuant to a customary protective order or waiver of confidentiali-

ty by defendants, the FCC, except in the course of legal proceedings to which plaintiff United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D. If at the time information or documents are furnished by defendants to plaintiff United States, defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then plaintiff United States shall give defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI. *No Reacquisition*

Defendants may not reacquire or lease any part of the Divestiture Assets during the term of this Final Judgment.

## XII. *Retention of Jurisdiction*

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII. *Expiration of Final Judgment*

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

## XIV. *Public Interest Determination*

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust

Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and plaintiff United States's responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.